**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1000-22

KHALILAH SHABAZZ,

    Plaintiff-Appellant,

v.

OSMAN AHMED, AHMED AZMY,
OMAR RIAD, and ATTIA
SWEILLAM,

    Defendant-Respondents.

_____

Submitted February 7, 2024 – Decided March 20, 2024

Before Judges Currier and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6150-21.

Law Office of Eric J. Warner, LLC, attorney for appellant (Eric James Warner, of counsel and on the brief).

Pashman, Stein, Walder & Hayden, PC, attorneys for respondents (Deanna L. Koestel, of counsel and on the brief; Matthew Edward Frisch, on the brief).

PER CURIAM

This case involves a dispute between plaintiff, Khalilah Shabazz, and the governing body of The Islamic Society of Essex County (ISEC). Plaintiff is a longtime worshipper who participates in the religious and cultural activities of ISEC. Defendants, Osman Ahmed, Ahmed Azmy, Omar Riad, and Attia Sweillam, are members of ISEC's board of trustees (the Board). The Board sold the building where ISEC provided religious and cultural services for many years. The Board purchased another building and moved ISEC's activities to the new location. Plaintiff opposed the move, claiming the sale and purchase were ultra vires.

Plaintiff appeals an October 26, 2022 Law Division order issued by Judge Thomas A. Callahan granting defendants' motion to dismiss her derivative action, breach of charitable trust, and a direct cause of action against defendants. Judge Callahan found plaintiff did not have standing to sue on behalf of ISEC because under its incorporation status, it has "no members" for purposes of a derivative action. The trial court also ruled plaintiff does not have standing to sue as a beneficiary of an irrevocable trust, nor does she have individual standing because that claim was an "unspecified cause of action." After carefully reviewing the record in light of the governing legal principles, we affirm.

A-1000-22

I.

We discern the following pertinent facts from the record. ISEC is a non-profit corporation formed in May 2003 pursuant to the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to 16-2. ISEC's purpose is "the establishment, advancement and perpetuation of an Islamic educational, religious, and charitable organization."

The record includes several corporate documents that bear on the question of whether plaintiff is a member for purposes of standing to bring a derivative action on behalf of the corporation. The 2003 Articles of Incorporation, which are signed and dated, state "[t]he Corporation shall have no members" under a section labeled "[m]embership." The 2003 Articles of Incorporation nonetheless includes a section that refers to "members" in a string list of persons, providing "[n]o part of the net earnings of the corporation shall [inure] to the benefits of, or be distributable to its members, trustees, officers or other private persons. . . ." (emphasis added).

Plaintiff relies on a document titled "By-laws amendment for the Islamic Society of Essex County" dated September 30, 2018 (2018 By-laws). This document is not signed. Under Article 1 of this document, it states "[ISEC] will be the name of the non-member, non-political, non-profit religious, charitable,

A-1000-22

and educational corporation. . . ." (emphasis added). However, Article 10 of the unsigned document also provides an oath of fidelity, stating "I . . . hereby proclaim and declare that I am a <u>practicing member</u> of ISEC and agree[] to. . . ." (emphasis added). Section 5.2.1 of the unsigned 2018 By-laws further provides "[t]he services, facilities and resources of the Society shall be available to those <u>community members</u> of ISEC who follow its code of ethics and respect its values[]. . . ." (emphasis added).

The Branford Building—the building where ISEC previously provided religious and cultural services—is located on Branford Place in Newark. Under the 2018 By-laws, Section 2.1 provides, "[t]he fundamental objectives of the society will be: [m]aintaining and preserving the building as an Irrevocable Trust/Endowment and property in which the Society is located" and "[k]eeping/maintaining the well-being of the building from the structural/ architectural points of views."

The record also includes by-laws that were adopted in June 2019 (2019 By-laws), which are signed by five Trustee members. The 2019 By-laws confirm ISEC was organized under Title 15A and provide, in pertinent part:

> At least a majority of the Trustees in office shall be present at each meeting in order to constitute a quorum for the transaction of business. Every Trustee shall be entitled to one vote. Except as otherwise specified in

4

the articles or these [b]y[-]laws or provided by statute, the acts of a majority of the Trustees present at a meeting at which a quorum is present shall be the acts of the Board.

Additionally, Section 3.01.1 of the 2019 By-laws provides, "[t]he board shall have full power to conduct, manage, and direct the business and affairs of the Society; and all powers of the Society are hereby granted to and vested in the Board."

The 2019 By-Laws do not refer to "members." Nor does the document refer to an irrevocable charitable trust.

Publicly filed deeds show that on September 15, 1981, the City of Newark deeded the Branford Building to the American-Arab Chamber of Industry and Development. Ownership was transferred several times between 1981 and 2006. On May 5, 2006, the Islamic Cultural Center, Inc. deeded the building to ISEC.

On November 5, 2020, plaintiff filed a verified complaint and an order to show cause application in the Chancery Division seeking temporary restraints and a preliminary injunction enjoining ISEC from selling the building. On November 12, 2020, Judge Jodi Lee Alper granted plaintiff's request for a temporary restraining order and set a December 8, 2020 hearing for the preliminary injunction. Judge Alper permitted both parties to serve limited document requests and required certified responses to the discovery.

A-1000-22

By order dated December 9, 2020, Judge Alper lifted the temporary restraints and determined ISEC was not restrained or enjoined from selling the Branford Building. Judge Alper also denied the Board's cross-motion to dismiss the complaint without prejudice.

On December 16, 2020, we denied plaintiff's request for leave to appeal on an emergent basis. The next day, the Supreme Court denied plaintiff's emergent application.

On December 18, 2020, ISEC sold the building. Three days later, ISEC purchased a new building and transferred its operations and facilities to the new site.

Plaintiff filed her initial verified amended complaint on December 20, 2020. In March 2021, defendants filed a motion for summary judgment. Plaintiff cross-moved to amend her complaint and transfer the matter from the Chancery Division to the Law Division. On June 30, 2021, Judge Alper denied defendants' motion for summary judgment without prejudice, transferred the matter to the Law Division, and granted leave for plaintiff to file a second amended complaint. The second amended complaint alleged defendants violated the terms of an irrevocable trust, engaged in ultra vires acts, and committed violations under Title 16.

6

In August 2021, defendants filed a motion to dismiss the complaint. On March 1, 2022, Judge Stephen L. Petrillo dismissed plaintiff's claims for punitive damages without prejudice. The judge ordered plaintiff to amend her complaint "to more clearly articulate her claims and causes of action . . . that set forth the elements of the causes of action and basis for relief. . . ."

On March 23, 2022, plaintiff filed a third amended complaint, naming four of the Board's members as defendants. The complaint asserted a derivative action, breach of charitable trust, and a direct cause of action.

In April 2022, defendants moved to dismiss the third amended complaint. On October 26, 2022, Judge Callahan granted defendants' motion. In his oral opinion, Judge Callahan addressed the membership issue, holding:

> [S]ince . . . ISEC has complied with the requirements to be incorporated as a non-member entity under Title 15[]A, [p]laintiff cannot acquire standing to sue over an alleged ultra vires transaction by alleging membership status since ISEC has no members. It is for the above reasons that count one of [p]laintiff's complaint should be dismissed and will be dismissed.

With respect to the breach of charitable trust count, Judge Callahan determined:

> According to deeds to the Branford Property, the Islamic Cultural Center, Inc., rather than . . . [ISEC], owned the Branford Building in 2005. ISEC did not take ownership until 2006, therefore, the document

7

[p]laintiff identifies as the 2005 Constitution could not have created the trust since ISEC did not own the subject property at the time. Therefore, count two of [p]laintiff's complaint is dismissed.

Lastly, with respect to the direct action, Judge Callahan described the complaint as an "unspecified cause of action" that was "unactionable." He reasoned plaintiff

> has not actually listed intentional infliction of emotional distress as a cause of action she is pursuing. Instead, neither following Judge Petrillo's order to quote, "[m]ore clearly articulate her claims and causes of action and titled and numbered counts that set forth the elements of the cause of action," nor meeting the requirement that, quote, "[p]leadings must fairly apprise the adverse party of the claims and issues to be raised at trial." See Spring Motors Distrib. [v.] Ford Motor Co[.], 191 N.[J.] Super[.] 22, 29[], App[.] Div[.], 1983, aff['ld in part and rev['ld in part on other grounds, 98 N[.] J[.] 555, [(1985)].

This appeal follows. Plaintiff raises the following issues for our consideration: (1) plaintiff, as a member of the society, has standing to sue defendants for illegal ultra vires acts and omissions under Title 16; (2) plaintiff, as a member of the society, has standing to sue defendants on behalf of the society for illegal ultra vires acts under Title 15A; (3) Title 16 and Title 15A are not mutually exclusive; (4) the requirements for derivative suits on behalf of for-profit corporations are different than that of Title 15A non-profit

8

corporations; (5) plaintiff possesses standing to sue as a beneficiary of an irrevocable charitable trust; (6) plaintiff possesses individual standing to sue; and (7) plaintiff has the remedy of seeking monetary damages from the trustees.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. We review an order granting a motion to dismiss for failure to state a claim "de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). That standard is whether the pleadings even "suggest[ ]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

We "must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)). To determine the adequacy of a pleading, we must decide "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co.,109 N.J. 189, 192 (1988)).

III.

Plaintiff relies on Title 16 to support her contention the sale of the Branford Building was ultra vires. More specifically, N.J.S.A. 16:1-6 provides:

> The trustees of any church or religious society and their successors in office or a majority of them are authorized and empowered to sell at public or private sale and convey in fee simple or otherwise all the church and parsonage property of such church or religious society together with all the estate, right, title and interest which the said trustees or stewards or other officers now have or may have in the same by virtue of any deeds of conveyance or otherwise, if the sale is authorized and directed by a majority of the members present at any meeting called by the trustees and held at its usual place of public worship, after at least ten days' notice of the time and place and object of such meeting, by advertisement set up in open view at or near the place of meeting, which notice shall be signed by the president and secretary of the board of trustees or by a majority of the trustees.
>
> [(N.J.S.A. 16:1-6).]

Plaintiff's reliance on Title 16 in misplaced, however, because it is undisputed ISEC was incorporated under the authority of Title 15A, not Title 16.

The case law makes clear the two statutory frameworks are independent, indeed mutually exclusive. As a matter of law, therefore, it is unavailing for plaintiff to rely on language governing a Title 16 corporation and apply it to a corporation formed under Title 15A.

10

In <u>Bible Presbyterian Church, Inc. v. Harvey Cedars Bible Conf. Inc.</u>, 84 N.J. Super. 441 (App. Div. 1964), the plaintiff asserted the defendant was a religious society "subject to the laws relating to such societies" such as N.J.S.A. 16:1—25, which forbade "the diversion of property 'to any purpose other than the support and maintenance of the church or religious or benevolent institution or object connected with the church or denomination to which the corporation belongs.'" <u>Id.</u> at 449-450. We rejected the plaintiff's argument, reasoning the "[d]efendant chose to incorporate under Title 15, which contains no provision corresponding to [N.J.S.A.] 16:1—25. . . ." <u>Id.</u> at 450. We further explained "[s]ince corporate powers of non-profit corporations are derived from their articles of incorporation and the law under which the corporation came into being . . . the actions of the defendant's board of trustees should be measured by the standards set in [N.J.S.A.] 15:1—1 et seq. . . ."[1] <u>Ibid.</u> We thus held "[N.J.S.A] 16:1—25, . . . [was] not applicable to defendant, a Title 15 corporation." <u>Id.</u> at 451.

---

[1] Repealed by the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to :16-2.

IV.

Having determined this litigation is governed by Title 15A, not Title 16, we next consider the text of the governing statutory framework. N.J.S.A. 15A:2-8(a)(5) provides unequivocally, "[t]he certificate of incorporation shall set forth: [i]f the corporation is to have no members, that there shall be no members."

In the matter before us, Article VII of the Articles of Incorporation explicitly "set[s] forth" that "[t]he Corporation shall have no members." Plaintiff nonetheless asks us to disregard that clear declaration because another section in the Articles of Incorporation has a passing reference to "members" in a string site of persons to whom net earnings may not be distributed. Applying de novo review, we are satisfied the Articles of Incorporation, read in their entirety and in a commonsense fashion, satisfy the requirement in N.J.S.A. 15A:2-8(a)(5) and set forth that ISEC has no members for purposes of its governance structure. We conclude the clear declaration in Article VII takes precedence over the passing reference to members in the section prohibiting the distribution of net earnings to various persons.

We likewise reject plaintiff's argument that other corporate documents contradict the Articles of Incorporation and show that ISEC has members that

12

might bring a derivative lawsuit on behalf of the non-profit corporation. As we have noted, plaintiff cites the unsigned 2018 By-laws which provide:

> The services, facilities and resources of the Society shall be available to those <u>community members</u> of ISEC who follow its code of ethics and respect its values, and who have been satisfactorily accepted by the Board or its designees, and who follow the principles and guidelines which are implemented by the Society.

Relatedly, Article 10 of the 2018 By-laws provides for an oath of fidelity for "<u>practicing members</u>."

We interpret the terms "<u>community</u> members" and "<u>practicing</u> members" to refer to worshippers, not to members as that term is used in Title 15A and Article VII of the Articles of Incorporation to refer to the equivalent of shareholders for purposes of corporate governance.

In sum, applying de novo review, we agree with Judge Callahan that ISEC does not have members who might be authorized to bring a derivative action on behalf of the corporation. We therefore affirm Judge Callahan's decision to dismiss the first count of the third amended complaint. Because we determine plaintiff does not have standing to bring a derivative action on behalf of ISEC, we need not address defendants' contention plaintiff has failed to comply with procedural prerequisites to a derivative suit set forth in <u>Rule</u> 4:32-3.

A-1000-22

V.

We next address whether plaintiff has standing to bring a direct suit challenging the Board's decision to relocate to a new facility. "A shareholder may maintain a direct action against a corporation or its directors if the shareholder suffers a '"special injury."'" Tully v. Mirz, 457 N.J. Super. 114, 124-125 (App. Div. 2018) (quoting Strasenburgh v. Straubmuller, 146 N.J. 527, 550 (1996)). There is special injury when "'there is a wrong suffered by [the] plaintiff that was not suffered by all stockholders generally. . . .'" Ibid. (quoting Strasenburgh, 146 N.J. at 550). Here, there is no special injury to plaintiff other than her contention she was the "Mother of the Mosque" and prayed there for forty years. The change of location affected all worshippers, not just plaintiff.

VI.

We need only briefly address plaintiff's contention an irrevocable trust in the Branford Building was created in the unsigned 2018 By-laws, and the Board breached that trust by selling the building rather than maintaining and preserving it. Even accepting for the sake of argument duly issued[2] by-laws evince an intent to preclude the Board from ever selling the building, nothing in the unsigned

---

[2] We note the 2019 By-laws, which are signed, do not include any reference to maintaining and preserving the Branford Building as an irrevocable trust.

A-1000-22

2018 By-laws on which plaintiff relies makes her a beneficiary entitled to enforce any such irrevocable trust. As we held in the preceding sections, plaintiff does not have standing to bring a derivative action on behalf of ISEC. Nor does she have individual standing to bring this lawsuit. We therefore affirm the dismissal of the count alleging the Board breached an irrevocable trust.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1000-22